## UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | |
| | : | Chapter 11 |
| ALB CARE, INC. | : | |
| | : | Bky. No. 18-11583(AMC) |
| Debtor. | : | |
| | : | |
| | : | |

## ORDER DISMISSING THE DEBTOR'S CASE

Upon consideration of the *Motion of Eraldo Qato for an Order Dismissing the Debtor's Case or, in the Alternative, Terminating the Automatic Stay* (the "Motion to Dismiss"), and for good cause shown, it is hereby ORDERED:

1.    The relief requested in the Motion is GRANTED.

2.    Bankruptcy Case No. 18-11583 is DISMISSED.

Dated: _____, 2018

_____
The Honorable ASHELY M. CHAN
United States Bankruptcy Court Judge

## UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | |
| | : | Chapter 11 |
| ALB CARE, INC. | : | |
| | : | Bky. No. 18-11583(AMC) |
| Debtor. | : | |
| | : | |
| | : | |

## MOTION OF ERALDO QATO FOR AN ORDER DISMISSING
## THE DEBTOR'S CASE OR, IN THE ALTERNATIVE,
## TERMINATING THE AUTOMATIC STAY

Eraldo Qato ("Qato"), by and through undersigned counsel, moves the Court to dismiss the Debtor's case, or, in the alternative, to terminate the automatic stay to permit the Court of Common Pleas of Bucks County, Pennsylvania to enforce a preliminary injunction order entered against the Debtor pre-bankruptcy. This Motion and the Exhibits attached hereto provide support for the relief Qato seeks.

### PRELIMINARY STATEMENT

The Debtor instituted this bankruptcy proceeding as part of its continuing dilatory efforts to avoid compliance with a preliminary injunction order entered by the Honorable Robert J. Mellon in the Court of Common Pleas of Bucks County, PA. The preliminary injunction order was entered against the Debtor, as well as its record owner Imelda Xoxe and her husband Petraq Xoxe, on January 9, 2018. The preliminary injunction order was necessitated by brazen, unlawful conduct of the Xoxe's, and their newly formed corporation Alb Care, Inc. (the Debtor), in wrongfully diverting clients and usurping a corporate opportunity.

The preliminary injunction order expressly prohibits the Debtor, as well as the Xoxe's, from operating a home care business in the Philadelphia metropolitan area. Thus, by virtue of the preliminary injunction order, the Debtor is legally enjoined from engaging in its one and only business. Nevertheless, the Debtor has chosen to ignore the preliminary injunction order. It continues to operate its home care business in blatant disregard for Judge Mellon's Order. Having failed to obtain a stay of the preliminary injunction order in the trial court, as well as in the Pennsylvania Superior Court, the Debtor has now filed a petition in bankruptcy as its latest litigation tactic to delay the inevitable.

As set forth more fully below, this Motion and the supporting evidence demonstrate that this bankruptcy case was filed in bad faith. This case falls squarely within the Third Circuit's test for dismissing cases where there is no reorganization purpose and the filing of a bankruptcy petition is a litigation tactic. The Debtor's tactical maneuvering is apparent simply from the timing of the filing: the Debtor's bankruptcy petition was filed just eight days after the Pennsylvania Superior Court denied its Application for Stay Pending Appeal. Further, the Debtor's business cannot be reorganized, as to do so would violate the preliminary injunction order which prohibits the Debtor from operating a home care business in the Philadelphia metropolitan area. For these reasons, and for the reasons set forth below, this Court should grant Qato's Motion, and allow him to seek enforcement of his rights in the trial court.

## BACKGROUND

1.      On January 9, 2018, after a full evidentiary hearing and the submission of proposed findings and fact and conclusions of law, the Court of Common Pleas of Bucks County, PA entered a preliminary injunction order against the Debtor, as well as its record owner (Imelda Xoxe) and her husband (Petraq Xoxe). A true and accurate copy of the preliminary injunction order dated January 9, 2018 is attached hereto as **Exhibit A**.

2

2.    The Preliminary Injunction Order imposes three separate requirements upon the Debtor. First, the Debtor was enjoined from taking any further action to compete with America's Home Care, Inc. and/or to operate in the home care business in the Philadelphia Metropolitan area. Second, the Debtor was required to escrow all revenue derived from the operation of a home care business in competition with America's Home Care, Inc. Third, the Debtor was directed to provide a full and complete accounting of all revenue derived from the operation of its business. Id.

3.    The preliminary injunction was necessitated to prevent the immediate and irreparable harm being caused to the business of America's Home Care, Inc. by virtue of the wrongful conduct of its 50% owner, officer, and director, Petraq Xoxe, in concert with his wife, Imelda Xoxe, and her newly formed corporation, the Debtor ("Alb Care, Inc.").

4.    Specifically, supporting the issuance of the preliminary injunction order, the trial court received evidence demonstrating that:

A.    Eraldo Qato ("Qato") is an officer, director and 50% shareholder of America's Home Care Inc.

B.    Petraq Xoxe is the other officer, director and 50% shareholder of America's Home Care Inc.

C.    America's Home Care Inc. is a Pennsylvania corporation engaged in the business of providing home care services in the Philadelphia metropolitan area. Its offices are located in Bensalem, PA

D.    In 2011, Qato obtained employment with the Philadelphia Corporation for Aging as a Care Manager. In that employment, he became familiar with the home care industry inasmuch as he

3

frequently was called upon to arrange for home care for consumers whose care he was managing.

E.      In 2013, Qato brought to Petraq Xoxe's attention the opportunity to start a home care agency to provide services primarily to the Albanian and Greek communities in the Philadelphia area.

F.      In 2013, Qato and Petraq Xoxe entered into an oral agreement to pursue the home care business opportunity. The terms of their agreement were as follows:

i.      Petraq Xoxe would advance the capital necessary to start up the business.

ii.      Each of them would devote their best efforts to the business venture and receive equal compensation from the business.

iii.      A corporation to be named America's Home Care Inc. would be formed to own the business venture.

iv.      Until such time as Petraq Xoxe received the return of his capital contribution to the business, he would be the sole owner of the corporation. However, upon the repayment to Petraq Xoxe of his capital contribution, Qato would be issued 50% of the stock in the corporation.

G.      In furtherance of the agreement, on or about August 19, 2013, Petraq Xoxe incorporated America's Home Care Inc.

H.      In October 2014, Qato left his employment with Philadelphia Corporation for Aging and began to work full time at America's Home Care Inc.

4

I.      In accordance with their oral agreement, 2015 profits were equally split among Qato and Petra Xoxe.

J.      Commencing in or about May 2016, the corporation was financially strong enough to repay to Petraq Xoxe his capital contribution. At that time, as agreed from the outset, 50% of the stock in the corporation was issued to both Qato and Petraq Xoxe.

K.      At all times, Qato and Petraq Xoxe have received equal compensation from the corporation in the form of salary and distributions.

L.      America's Home Care Inc. has now become profitable. In 2016, each of the shareholders received total compensation in excess of $300,000 from the corporation in the form of salary and profit distributions.

M.      Prior to the events giving rise to this lawsuit, America's Home Care Inc. had obtained approximately 100 clients for the business. Many of the clients were recommended to the business by Imelda Xoxe, who is active in the Philadelphia-area Albanian community.

N.      Unbeknownst to Qato, in 2016, as the business became profitable, Imelda Xoxe became unhappy with the fact that her husband Petraq had agreed to a 50-50 split of the profits with Qato.

O.      Shortly thereafter, Imelda Xoxe, with the encouragement and assistance of Petraq Xoxe, undertook the process of forming the Debtor (Alb Care, Inc.), a competing home care business.

5

P.      Petraq Xoxe and Imelda Xoxe discussed whether to inform Qato of the plan to form Alb Care, Inc. and to solicit the clients and employees to leave America's Home Care and transfer to Alb Care, Inc. Nevertheless, both of them decided not to inform Qato of their plan.

Q.      Accordingly, at no time was the opportunity to form a competitive home care agency brought the attention of Qato and/or to America's Home Care, Inc.

R.      Likewise, Petraq Xoxe never sought or received the consent of America's Home Care, Inc. to pursue that business opportunity.

S.      Although Petraq Xoxe remained President of America' Home Care, and despite the fact that he was aware that Alb Care, Inc. was contacting the clients of America's Home Care and providing them with the paperwork necessary to transfer to Alb Care, Inc., he took no steps whatsoever to discourage them from doing so. Nor did he even tell his business partner, Qato, that America's Home Care was about to lose more than 50% of its revenue.

T.      During this same period, not only did Petraq Xoxe continue to receive his substantial salary from America's Home Care, but he also received $80,000 in profit distributions.

U.      In early 2017, Imelda Xoxe began to contact each of the clients and employees who she had referred to America's Home Care and she requested them to switch to Alb Care, Inc. Every client and employee was willing to do so out of loyalty to her.

6

V.      The sole motivating factor for persuading the clients and
employees to switch was greed – the desire on the part of Petraq and
Imelda Xoxe to receive 100% of the profits and not to share 50% with
Qato.

W.      Thus, by signing paperwork prepared by Alb Care, Inc., a
client and employee could simply transfer from America's Home Care
to Alb Care, Inc. For practical purposes, this transfer would have no
impact on their daily lives. The client would still receive the same
home care services from the same home care worker. Medicaid would
still reimburse for the services provided, the only difference being the
agency through which the reimbursement was processed.

X.      Significantly, commencing in the fall of 2016 and continuing to
the present, Petraq Xoxe has not referred a single new client to
America's Home Care.

Y.      As Qato testified, since 2016, Qato has been providing the
lion's share of the work necessary to operate the business.

Z.      Worse still, in May 2017, just as Alb Care, Inc. opened for
business, Petraq Xoxe abruptly terminated the employment of Qato's
sister, Pema Qato. Pema Qato was the America's Home Care office
manager who had regular contact with clients and employees. It is
evident that the termination of Pema Qato was calculated to further
cripple the efforts of America's Home Care to preserve its business
from the misappropriation of its client and employees by the Xoxe's
and Alb Care, Inc.

AA.    In mid-May 2017, Appellants pulled the trigger on their plan and caused approximately 35 clients and employees of America's Home Care to transfer to Alb Care, Inc.

BB.    At the preliminary injunction hearing, Imelda Xoxe readily testified that the remainder of her referred clients have been approached about transferring, and will transfer to Alb Care, Inc. out of loyalty to her.

CC.    Petraq Xoxe's concealment of the existence of Alb Care, Inc. and of the plot to solicit the majority of America's Home Care's clients, while he certainly had a duty as President of America's Home Care, Inc. to disclosed this information, is persuasive evidence of his involvement in Alb Care, Inc.

DD.    Likewise, Imelda Xoxe conceded in her testimony that she and her husband are "one" when it comes to their assets and financial dealings.

EE.    Thus, she conceded that joint funds were utilized for the startup of Alb Care, Inc.

FF.    In fact, Petraq and Imelda Xoxe jointly purchased the building in which Alb Care, Inc. maintains its offices.

GG.    So too, Petraq Xoxe assisted in helping Alb Care, Inc. becoming licensed. He personally attended, along with his daughter, the mandatory orientation in Harrisburg, PA.

HH.    Petraq Xoxe admitted in his testimony that he provides advice to Imelda Xoxe and that he wants Alb Care, Inc. to succeed. Of course,

8

there would be nothing wrong with those things if, prior to actively working toward the destruction of America's Home Care, Petraq Xoxe had resigned as an officer and director of the corporation. However, he did not do that. Instead, he remained silent and continues to benefit from his disloyalty by receiving a salary from America's Home Care while simultaneously working toward its demise.

II.     At the preliminary injunction hearing, the trial court heard the testimony of three independent witnesses, each of whom testified about Petraq Xoxe's conduct that demonstrates his breach of fiduciary duty.

JJ.     First, Georgia Deisi testified that she is an employee of America's Home Care who provides home care services. In June 2017, Petraq Xoxe had contacted Ms. Deisi informing her that Qato had filed a lawsuit against him. Petraq also informed Ms. Deisi that his wife had started a home care agency and asked her to switch there if her mother agreed. On June 19th, 2017, Ms. Deisi was contacted by Lemmonia Lawrence, former office employee of America's Home Care Inc. now employed by Alb Care, who demanded that Ms. Deisi go over to Petraq Xoxe's new office and complete the paperwork to transfer to Alb Care, Inc. Ms. Deisi found the entire interaction with Petraq Xoxe to be both unusual and unethical and she chose to stay on as an employee of America's Home Care.

KK.     Next, Sabrina Phinizy testified that she is an office worker at America's Home Care, Inc. Although she has limited interaction with

9

Petraq Xoxe, she testified that he recently asked to speak with her. He

then proceeded to tell her that she should be looking for another job

because America's Home Care will soon be out of business.

LL.    Finally, Kristiana Gerxhi testified that she is the new Office

Manager of America's Home Care. She also conveyed that Petraq

Xoxe has told her that America's Home Care will soon be out of

business.

5.    After the preliminary injunction hearing, the parties each submitted proposed

findings of fact and conclusions of law, whereupon the trial court issued the preliminary

injunction order precluding the Debtor from continuing to operate its home care business in

competition with America's Home Care, Inc.

6.    Debtor chose not to comply with the preliminary injunction order. Instead, on

January 12, 2018, the Debtor (and Imelda Xoxe) took an appeal to the Pennsylvania Superior

Court. See **Exhibit B** (Notice of Appeal). Thereafter, the Debtor filed a Motion for Stay in the

trial court. See **Exhibit C** (Motion for Stay). On February 6, 2018, the trial court denied the

Motion for Stay. See **Exhibit D** (Order denying Motion for Stay). Next, the Debtor filed an

Application for Stay Pending Appeal in the Pennsylvania Superior Court. See **Exhibit E**

(Application for Stay). The Application for Stay was denied by the PA Superior Court by Order

dated February 28, 2018. See **Exhibit F** (Order Denying Application for Stay).

7.    Having failed twice to obtain a stay, the Debtor continued to ignore the

preliminary injunction order.

8.    The Debtor filed its petition on March 8, 2018.

## RELIEF REQUESTED

9.      By this Motion, Qato respectfully requests that this Court dismiss the Debtor's case for cause because the Debtor filed its case in bad faith as a litigation tactic in what is ostensibly a two-party dispute between Qato and the Debtor, and there is no ability to reorganize. In the alternative, Qato requests relief from automatic stay to enforce the terms of the trial court's preliminary injunction order because (i) Qato and America's Home Care, Inc. are suffering irreparable harm, (ii) the Debtor cannot provide Qato with adequate protection for its irreparable harm as required by 11 U.S.C. § 362(d)(1) and (iii) the Debtor commenced this case in bad faith as a litigation tactic and such bad faith constitutes cause to terminate the automatic stay under 11 U.S.C. §362(d)(1).

## BASIS FOR RELIEF

10.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §1334(b). The proceeding instituted by this Motion is a core proceeding pursuant to 28 U.S.C. §157.

11.      The predicates for the relief sought by the Motion are 11 U.S.C. §§105, 362(d), 1112(b), and 1129, and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

12.      Venue is proper in the Court pursuant to 28 U.S.C. §§1408 and 1409.

## I.      The Debtor's Case Should Be Dismissed For Cause Pursuant to Section 1112(b) of the Bankruptcy Code.

13.      Section 1112(b) of the Bankruptcy Code provides, in pertinent part:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under this chapter . . . if the movant establishes cause.

11

11 U.S.C. §1112(b).

14.     The term "cause" is not defined in §1112(b), and the examples of cause set forth in §1112(b)(4) are illustrative and not exhaustive. *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991); *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d. Cir 1999). *In re 15375 Memorial Corp.*, 589 F.3d 605, n.8 (3d Cir. 2009). A court should examine the totality of the circumstances in a particular case when determining if there is sufficient cause to dismiss or convert a chapter 11 case. *Id.*

15.     Once bad faith is alleged, the debtor bears the burden of proving good faith. *In re DCNC North Carolina I, LLC, Goose Marsh LLC*, 407 B.R. 651, 661 (Bankr. E.D. Pa. 2009) (citing *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 211 (3d Cir. 2003)).

### A.     The Debtor's Case Was Filed in Bad Faith and As a Litigation Tactic.

16.     Although not specifically set forth in section 1112(b), "good faith" is considered to be an implicit requirement in the filing and maintenance of a bankruptcy petition under Chapter 11, and a lack of good faith (or the presence of bad faith) is consistently recognized as a cause for dismissal. See, e.g., *DCNC*, 407 B.R. at 661 (citing *SGL Carbon Corp.*, 200 F.3d at 160-62); *In re Clinton Centrifuge, Inc.*, 72 B.R. 900, 904 (Bankr. E.D. Pa. 1987).

17.     When determining if a case was filed in good faith, a court should focus on: "(1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *In re Integrated Telecom Express*, 384 F.3d 108, 119 (3d Cir. 2004); *In re 15375 Memorial Corp.*, 400 B.R. 420, 427 (D. Del. 2009) *aff'd* 589 F.3d 605 (3d Cir. 2009). Courts have identified a number of additional factors that indicate a debtor has filed a bankruptcy petition in bad faith, including, but not limited to:

(1)    the debtor has few or no unsecured creditors;

(2)    there has been a previous bankruptcy petition by the debtor or a related entity;

(3)    the prepetition conduct of the debtor has been improper;

(4)    the petition effectively allows the debtor to evade court orders;

(5)    there are few debts to non-moving creditors;

(6)    the petition was filed on the eve of foreclosure;

(7)    the foreclosed property is the sole or major asset of the debtor;

(8)    the debtor has no ongoing business or employees;

(9)    there is no possibility of reorganization;

(10)    the debtor's income is not sufficient to operate;

(11)    there was no pressure from non-moving creditors;

(12)    reorganization essentially involves the resolution of a two-party dispute;

(13)    a corporate debtor was formed and received title to its major assets immediately before the petition; and

(14)    the debtor filed solely to create the automatic stay.

*In re DCNC North Carolina I, LLC*, 407 B.R. 651, 662 (E.D. Pa. 2009) (quoting *In re SB Properties, Inc*, 185 B.R. 198, 205 (E.D. Pa. 1995)). *See also In re Primestone Investment Partners, L.P.*, 272 B.R. 554, 557 (Bankr. D.Del. 2002). A court's analysis of these factors determines whether a debtor is using the bankruptcy process to achieve objectives outside the scope of the bankruptcy laws. *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999).

13

18.     "'Good faith' implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization, and not merely as a device to serve some sinister or unworthy purpose." *In re Metropolitan Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970) (citing *In re Southern Land Title Corp.*, 301 F.Supp. 379, 428 (E.D. La. 1968)). The good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by debtors whose aims are antithetical to the basic purposes of bankruptcy and prevents abuse of the bankruptcy process by debtors whose overriding motive is solely to delay creditors. *In re Integrated Telecom Express, Inc.*, 384 F.3d at 119. "As a general rule where . . . the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." *In re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988) (quoted by *SGL Carbon*, 200 F.3d at 165; see also *Clinton Centrifuge*, 72 B.R. at 905 ("When a debtor is motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.").

19.     An analysis of whether the Debtor's bankruptcy petition was filed for a valid bankruptcy purpose and whether it was filed to obtain a tactical advantage makes clear that the Debtor has not commenced its case in good faith. In fact, the Debtor obviously is using the bankruptcy process to achieve a tactical litigation advantage against Qato by invoking the automatic stay to prevent enforcement of the trial court's preliminary injunction order.

### (i)     The Petition was filed solely to create the automatic stay to evade compliance with the District Court's injunction.

20.     On February 28, 2018, the Pennsylvania Superior Court denied the Debtor's Application for Stay Pending Appeal of the trial court's preliminary injunction order. Instead of

complying with the terms of the preliminary injunction order, however, the Debtor filed its

petition for bankruptcy on March 8, 2018, invoking the automatic stay. Thus, the Debtor has

used the bankruptcy process as a litigation tactic for the sole purpose of evading its obligations

under the preliminary injunction order. See *In re 15375 Memorial Corp.*, 400 B.R. 420, 428 (D.

Del. 2009) (filing petition as a "litigation tactic" is not a valid justification for a bankruptcy

filing) *aff'd* 589 F.3d 605 (3d Cir. 2009).

21.     The Debtor's clear purpose in filing this bankruptcy case is inescapable: the

Debtor filed its case for strategic purposes to thwart compliance with the trial court's preliminary

injunction order, and not for any other purpose.

### (ii)     The Debtor's obvious motive recognizes that this is a two party dispute and establishes its bad faith and improper conduct.

22.     As set forth in detail above, the underlying dispute that has occasioned the

Debtor's bankruptcy filing is based upon the wrongful misappropriation of clients usurpation of

a corporate opportunity by Petraq Xoxe, a 50% owner, officer and director of America's Home

Care, Inc. The trial court correctly determined that the Debtor company was created by Petraq

and Imelda Xoxe as a vehicle to aid and abet Petraq Xoxe in the continuing breach of fiduciary

obligations to his business partner, Eraldo Qato, and to America's Home Care, Inc. Thus, the

trial court had good cause to enter the preliminary injunction order in an attempt to preserve the

status quo until such time as the case is decided on the merits.

23.     Rather than abide by the preliminary injunction order, the Debtor has filed an

appeal to the PA Superior Court. Significantly, the Debtor failed to comply in any material

respect with the preliminary injunction will it sought, and was denied, stays in both the trial and

appellate courts.

24.    Only after the Superior Court denied its Application for Stay Pending Appeal di

the Debtor commence this case to invoke the automatic stay, thereby precluding the enforcement

of the preliminary injunction.

25.    Meanwhile, the Debtor continues to operate in direct competition with America's

Home Care, Inc.

26.    This bankruptcy filing was the latest step of the Debtor's plan and the strategy is

clear. Having lost in the trial court and having failed to obtain a stay pending appeal to the

Pennsylvania Superior Court, the Debtor no longer has any pretense whatsoever for its refusal to

comply with the preliminary injunction order. Thus, the Debtor's only remaining alternative –

the automatic stay in a bankruptcy case.  The Debtor's strategic intent to avoid compliance with

the preliminary injunction order can easily be inferred from its List of Creditors, which lists

Qato as the only creditor and places a question mark in the space allotted for a description of the

unsecured claim.

27.    There is no plan for reorganization, because there is nothing to reorganize. The

Debtor is precluded from operating its business because its business is wrongful – a transparent

attempt by a corporate office to divert the business of America's Home Care, Inc., in which he is

a 50% owner, to the Debtor business which is owned in full by he and his wife.

28.    The Debtor's attempt to avoid compliance with a preliminary injunction order by

filing a Chapter 11 petition is improper and should not be permitted.  For this reason, the

Debtor's bankruptcy case should be dismissed.

### (iii)    The Debtor's chapter 11 case essentially involves the Debtor seeking leverage in its two-party dispute with Qato.

29.    The Debtor's intention in filing its bankruptcy petition is clear: it wants to

continue to operate its home care business in the Philadelphia metropolitan area notwithstanding

the trial court's decision after a full-blown preliminary injunction hearing. By doing so, the Debtor will continue to cause immediate and irreparable harm to Qato and to America's Home Care, Inc.

30.     Based on the totality of the circumstances, it is clear that the Debtor cannot reorganize, did not have a legitimate bankruptcy purpose for commencing this case and sought bankruptcy protection solely as a litigation tactic to prevent having to comply with the District Court's preliminary injunction. This case was not filed in good faith and, as such, should be dismissed for cause pursuant to §1112(b).

## II.     In the Alternative, the Automatic Stay Should Be Terminated to Allow the District Court's Orders to be Enforced.

33.     Even if the Court does not dismiss this case, it should grant Qato's alternative request for termination of the automatic stay.

34.     The stay should be terminated for one simple reason:  in its preliminary injunction order, the trial court has determined that Qato is being irreparably harmed by the Debtor's continued operation of a home care business, and the Debtor cannot adequately protect Qato pending the outcome of the dispute on the merits. Therefore, short of voluntarily agreeing to comply with the preliminary injunction order, the Debtor cannot provide to Qato <u>any</u> protection that would prevent Qato from continuing to suffer irreparable harm throughout the bankruptcy.

### A.     <u>The Debtor Cannot Provide Qato with Adequate Protection.</u>

35.     Bankruptcy Code section 362(d)(1) provides that a Court shall grant stay relief if the debtor cannot provide adequate protection:

> (d)     On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under

> subsection (a) of this section, such as by terminating, annulling,
> modifying or conditioning such stay –
>
> > (1)  for cause, including the lack of adequate
> > protection of an interest in property of such
> > party in interest…

11 U.S.C. §362(d)(1).  See *Resolution Trust Corp. v. Swedeland Dev. Group, Inc.* (*In re Swedeland Dev. Group, Inc.*), 16 F.3d 552, 564 (3d Cir. 1994) ("'The whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which [it] bargained pre-bankruptcy'") (citations omitted).

36.     Simply, Qato is suffering irreparable harm by the Debtor's unlawful conduct and its refusal to comply with the preliminary injunction order. Therefore, the <u>only</u> adequate protection the Debtor can provide to Qato during the pendency of this bankruptcy proceeding is compliance with all of the terms of the preliminary injunction order.

37.     The trial court has determined that Qato is being irreparably harmed by the Debtor's continued operation. Specifically, at the preliminary injunction hearing in which the trial court heard the testimony of the parties, the evidence demonstrated that the Debtor had been formed for the purpose of aiding and abetting Petraq Xoxe's fiduciary duty to America's Home Care, Inc. and that the Debtor's business constituted a business opportunity that had been usurped from America's Home Care, Inc. The trial court entered the preliminary injunction order to protect Qato from the continuing irreparable harm being caused by the Debtor's wrongful conduct.

38.     Since the Debtor cannot provide adequate protection to Qato, he must be permitted to protect himself by enforcing the terms of the preliminary injunction order in the trial court.  Accordingly, the Debtor's inability to provide adequate protection is cause for the Court to terminate the stay to permit Qato to pursue all rights and remedies against the Debtor for its failure to comply with the terms of the preliminary injunction order.

**B.**    **The Debtor's Case Was Filed in Bad Faith.**

Bankruptcy Code section 362(d)(1) requires a court to grant relief from stay if there is "cause" to do so. It is axiomatic that a debtor's lack of good faith in filing a bankruptcy petition constitutes cause to lift the automatic stay. *See In re Reitnauer*, 152 F.3d 341, 344 (5th Cir. 1998); *Little Creek Dev. Co.*, 779 F.2d at 1071; *In re Dunes Casino Hotel*, 63 B.R. 939, 944 (D.N.J. 1986) (burden of demonstrating good faith in 362(d)(1) context is on the debtor); *In re Walden Ridge Dev., LLC*, 292 B.R. 58, 61-64 (Bankr. D.N.J. 2003); *Sterling Bank & Trust v. Merchant (In re Merchant)*, 256 B.R. 572, 577 (Bankr. W.D. Pa. 2000).

As shown above, the Debtor's bankruptcy filing is permeated with bad faith. It is transparently obvious that the case is nothing more than a scheme to delay and hinder the administration of justice in the trial court, and it serves no remedial purpose.

## CONCLUSION

Qato respectfully urges the Court to grant the relief sought in this Motion. There is no reason to allow this bankruptcy case, filed without any chance for the Debtor to reorganize and as a litigation tactic in the two-party dispute between the Debtor and Qato, to allow the Debtor to wrongfully invoke the shelter of bankruptcy and the automatic stay. The Debtor knowingly set itself on this course when it conspired to wrongfully usurp a corporate opportunity and aid a corporate officer in the breach of his fiduciary duties. The trial court determined that preliminary injunctive relief was necessary to avoid the immediate and irreparable harm caused by Debtor's conduct. The Debtor's filing of its bankruptcy petition is a blatant delay tactic causing additional harm, which is an improper use of the Bankruptcy Code. This Court is not the forum to resolve two-party disputes between Qato and the Debtor. The proper venue is in the Pennsylvania Court of Common Pleas, where the parties already are litigating their business dispute. This Court,

19

however, can put an end to the Debtor's obstreperous and dilatory conduct by dismissing the

chapter 11 case.

STANLEY B. CHEIKEN, ESQUIRE

Attorney Identification No. 62106
101 Greenwood Avenue, Suite 400
Jenkintown, PA 19046
(215) 572-8600

*Attorney for Eraldo Qato*

March 19, 2018

# EXHIBIT A

*Serving*
*& Mail*
*Checken*
*Whittels*
*1/9/18*

IN THE COURT OF COMMON PLEAS, BUCKS COUNTY, PENNSYLVANIA
CIVIL ACTION LAW

|  |  |  |
|---|---|---|
| ERALDO QATO, <br> individually and derivatively on behalf of <br> AMERICA'S HOME CARE, INC. | : : : : | |
| vs. | : : | No. 2017-02741 |
| PETRAQ XOXE; <br> IMELDA XOXE; and <br> ALB CARE, INC. | : : : : | |

Case #: 2017-02741-0024    11795785
Main (Public)
Code: 144    Judge:35
Rcpt: Z1916561  1/10/2018 1:55:50 PM

## ORDER

**AND NOW**, this  9th day of January, 2018, upon consideration of Plaintiff's Motion for

Preliminary Injunction, and Defendants' response thereto, good cause appearing, it is hereby

**ORDERED** and **DECREED** that said Motion is **GRANTED**.

It is further **ORDERED** that:

1. Defendants are ENJOINED from taking any further action, directly or indirectly to

   compete with America's Home Care, Inc. and/or to operate in the home care business in

   the Philadelphia metropolitan area.

2. A temporary constructive trust is hereby impressed upon all revenue derived by

   Defendants in connection with their operation, directly or indirectly, of any home care

   business in competition with America's Home Care, Inc. Third party payors shall be

   instructed to pay any revenue from said business into an escrow account and the funds

   shall be held in escrow until further Order of this Court.

3. Defendants shall provide a full and complete accounting of all revenue derived from the operation of Alb Care, Inc.

4. This Preliminary Injunction is made conditional upon the posting by Plaintiff of a bond with security approved by the Court, naming the Commonwealth as obligee, or other adequate security approved by the Court, in the amount of five hundred dollars ($500.00).

5. On January, 18th, 2018 at 2:30 pm a conference shall be held in the Court's Chambers for the purpose of establishing a case management order for this litigation and the necessity of a receiver.

**BY THE COURT:**

ROBERT J. MELLON, J.

N.B. It is the responsibility of the above action.

EXHIBIT B

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CIVIL DIVISION

**ERALDO QATO**  : No.  2017-02741
**Individually and derivatively on**  :
**behalf of**  :
**AMERICA'S HOME CARE INC.**  :
  :
  vs.  :
  :
**PETRAQ XOXE,**  :
**IMELDA XOXE and**  :
**ALB CARE, INC.**  :

RECEIVED
2018 JAN 12 P 4: 38
PROTHONOTARY
OF BUCKS COUNTY

Case #: 2017-02741-0025    11799949
Main (Public)
Code: 5301        Judge:35
Rcpt: 2018-24-00074  1/12/2018 4:38:02 PM

## NOTICE OF APPEAL

Notice is hereby given that the defendants above named, hereby appeals to the Superior Court of Pennsylvania from the Order entered on January 9, 2018 in the above matter.

This Order has been entered in the docket as evidence by the attached copy of the docket entries, marked Exhibit "A".

By: _____
    DONALD BENEDETTO, ESQUIRE
    Attorney for Appellants

DATED: 1/12/18

# EXHIBIT C

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

| | | |
|---|---|---|
| ERALDO QATO, individually & | : | NO. 2017-02741 |
| Derivatively on behalf of | : | |
| AMERICA'S HOME CARE, INC., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PETRAQ XOXE, IMELDA XOXE & | : | |
| ALB CARE, INC. | : | |
| Defendants. | : | |

## ORDER OF COURT

It appearing that an Appeal in the within matter has been taken to the Superior Court, and

upon Petition of Defendants-Appellants, it is Ordered that bond with Surety be set in the amount

of $_____.  Bond to be approved by the Court.

It is further Ordered that the Appeal in the within case shall act as a Stay of the Order of

the Court of Common Pleas of Bucks County, Pennsylvania in the within actions dated January 9,

2018.


Dated: _____

                                           BY THE COURT:


                                           _____
                                                          J.

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Benedetto & Associates
By:  Donald Benedetto, Esquire
Atty. I.D. #309199
1500 JFK Blvd., Suite 1203
Philadelphia, PA  19102
(215) 422-3560
(267) 244-9020 (fax)
ATTORNEY FOR DEFENDANTS:
Petraq Xoxe, Imelda Xoxe & Alb Care, Inc.

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

| | | |
|---|---|---|
| ERALDO QATO, individually & | : | NO. 2017-02741 |
| Derivatively on behalf of | : | |
| AMERICA'S HOME CARE, INC., | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PETRAQ XOXE, IMELDA XOXE & | : | |
| ALB CARE, INC. | : | |
|     Defendants. | : | |
| | : | |

### MOTION FOR STAY PENDING APPEAL

Imelda Xoxe and ALB Care, Inc., by their attorney, Donald Benedetto, Esq., in

accordance with Pa. R.A.P. 1732(a) moves for a stay of this Court's January 9, 2018, Order and

all proceedings except those necessary to maintain the status quo, in this matter pending appeal

from said Order, and in support thereof represents as follows:

1. This matter was commenced by the Plaintiff by way of Complaint filed on April 24,

   2017.  A copy of the Plaintiff's Complaint is attached hereto and incorporated herein

   as Exhibit "A".

2. On May 31, 2017, Plaintiff filed a Motion for Preliminary Injunction.  A Copy of the

   Plaintiff's Motion for a Preliminary Injunction is attached hereto and incorporated

   herein as Exhibit "B."

2

the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

3. On June 15, 2017, Defendants filed an Answer to Plaintiff's Motion for a Preliminary Injunction. A Copy of Defendants Answer is attached hereto and incorporated herein as Exhibit "C."

4. On June 19, 2017, the Parties entered into an interim Agreement to maintain the status quo. A copy of the Order effectuating this Agreement is attached hereto as Exhibit "D".

5. On August 9, 2017, the Court ordered a Preliminary Injunction in this matter directing that Fifteen Percent (15%) of the gross revenue of Defendant ALB Care, Inc., be placed in escrow. A copy of this order is attached hereto as Exhibit "E".

6. On October 30, 2017, testimony of witnesses was heard and an order was entered by the Court maintaining in effect the previous Order of the Court dated August 9, 2017, pending the submission of proposed findings of fact and conclusions of law by the parties. A copy of this Order is attached hereto as Exhibit "F."

7. On November 9, 2017, Defendants filed proposed findings of fact and conclusions of law. A Copy of Defendants proposed findings is attached hereto and incorporated herein as Exhibit "G."

8. On November 10, 2017, Plaintiff filed proposed findings of fact and conclusions of law. A Copy of Plaintiff's proposed findings is attached hereto and incorporated herein as Exhibit "H."

9. On January 9, 2018, the Court entered a final Order granting the Plaintiff's Motion for a Preliminary Injunction. A copy of this Order is attached hereto as Exhibit "I."

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

10. On January 12, 2018, Defendants filed a Notice of Appeal of the Court's Order of January 9, 2018. A Copy of Defendants' Notice of Appeal is attached hereto as Exhibit "J." (Notice not yet reflected on the Docket).

11. Paragraph One (1) of the Court's Order of January 9, 2018, enjoins all Defendants "from taking any further action, directly or indirectly to compete with America's Home Care, Inc., and/or to operate in the home care business in the Philadelphia metropolitan area." Exhibit "I".

12. Paragraph Two (2) of the Court's Order of January 9, 2018, states that a "temporary constructive trust is hereby impressed upon all revenue derived by Defendants in connection with their operation, directly or indirectly, of any home care business in competition with America's Home Care, Inc. Third party payors shall be instructed to pay any revenue from said business into an escrow account and the funds shall be held in escrow until further Order of this Court." Exhibit "I".

13. Defendant ALB Care, Inc., has approximately 57 Consumers which it provides services for all of which have been determined by the Commonwealth of Pennsylvania, Department of Public Welfare, to be Nursing Facility Clinically Eligible and thus eligible for Home and Community Based Waiver Services.

14. The Consumers identified in Paragraph Nine (9) herein are diagnosed by a physician to have an illness, injury, disability or medical condition requiring care and services.

15. The consumers are serviced by W-2 employees of Defendant ALB Care, Inc.

16. Defendant ALB Care, Inc., has approximately Sixty-Two (62) W-2 employees. Attached hereto as Exhibit "K" is a payroll report of Defendant ALB Care, Inc.

4

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

17. All employees providing home healthcare services by Defendant ALB Care, Inc., are required to undergo a criminal background check, Tuberculosis testing and State mandated training.

18. Transitioning consumers from one home healthcare provider to another is estimated to take approximately two (2) weeks.

19. The current payroll cycle for ALB Care, Inc., is from January 7, 2018 through January 26, 2018.

20. There are presently three (3) new Consumers about to commence services through Defendant ALB Care, Inc.

21. Unless a Stay is granted, approximately Fifty-Seven (57) Consumers will immediately cease to be provided home care services until such time as they enroll with a new provider.

22. Unless a Stay is granted, approximately Fifty-Nine (59) employees providing in-home care will experience a disruption in their wages.

23. Unless a Stay is granted, Three (3) back-office employees of Defendant ALB Care, Inc., to include Defendant Imelda Xoxe, will permanently lose their jobs.

24. Because the Court's Order of January 9, 2018, creates a constructive trust of <u>all revenue,</u> not just profits, and directs all revenue to be placed in escrow, Defendant ALB Care, Inc., cannot pay employees, workers compensation and other insurance premiums, and other operating expenses without further Order of the Court.

25. Unless a Stay is granted, Defendant ALB Care, Inc., will be forced to cease operations because it will be unable to fund its liabilities.

5

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

26. Unless a Stay is granted, Defendant Imelda Xoxe will be precluded from earning a wage in her chosen profession.

27. Unless a Stay is granted, Defendant Imelda Xoxe will lose all of her investment of paid in capital in ALB Care, Inc.

28. The Stay requested by Defendants ALB Care, Inc., and Imelda Xoxe is proper because they are likely to be successful on the merits of their appeal as the Preliminary Injunction is not necessary to prevent immediate and irreparable harm as the Complaint in this matter was filed over Seven (7) months ago.

29. The Stay requested by Defendants ALB Care, Inc., and Imelda Xoxe is proper because they are likely to be successful on the merits of their appeal as the Preliminary Injunction issued causes greater harm to the interested parties by effectively terminating ALB Care, Inc., as an ongoing business concern.

30. The Stay requested by Defendants ALB Care, Inc., and Imelda Xoxe is proper because they are likely to be successful on the merits of their appeal as the Preliminary Injunction is not reasonably suited as it goes far beyond enjoining Defendant Peter Xoxe from allegedly breaching a fiduciary duty owed to Plaintiff the essential claim of Plaintiff's Complaint.

31. The Stay requested for Defendants ALB Care, Inc., and Imelda Xoxe, will not harm the other interested parties because any alleged damages of the Plaintiffs, if any, caused by Defendants ALB Care, Inc., and Imelda Xoxe can be adequately compensated by money damages.

32. Specifically, Plaintiff's affidavit in support of his Preliminary Injunction states "[a]s a result, clients and prospective clients of America's Home Care, Inc. have been diverted to Alb Care Inc." Exhibit "B" at ¶30 of Plaintiff's Affidavit.

33. If it is proven that Imelda Xoxe and ALB Care, Inc., did improperly have clients diverted to it, these clients would have an ascertainable value which could be compensated by money damages and the parties are already enjoined from soliciting or accepting one another's clients.

34. The Stay requested does not adversely affect the public interest because the present Order, as it pertains to Imelda Xoxe, results in a restraint on trade which is disfavored by Pennsylvania law as it results in barring her from employment in her profession. See generally Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 632, 136 A.2d 838, 846 (1957) (regarding restraints on trade in the context of employment covenants and the historical reluctance on the part of Pennsylvania courts to enforce any contracts in restraint of free trade, particularly where they restrain an individual from earning a living at their trade).

WHEREFORE, Defendants Imelda Xoxe and ALB Care, Inc., respectfully request that the Court Stay its Order dated January 9, 2018, pending its appeal.

DATE: January 15, 2018                           RESPECTFULLY SUBMITTED,

                                                 Benedetto & Associates

                                                 /S/Donald Benedetto
                                                 By:  Donald Benedetto, Esquire
                                                 Atty. I.D. #309199
                                                 1500 JFK Blvd., Suite 1203
                                                 Philadelphia, PA  19102
                                                 (215) 422-3560
                                                 (267) 244-9020 (fax)

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**VERIFICATION**

I, Imelda Xoxe, hereby state that I am an officer in ALB Care, Inc., party in this action, that I am authorized to sign this verification on its behalf and verify that the statements made in the foregoing pleading are true and correct to the best of my knowledge, information and belief. I also understand that the statements are made subject to the penalties of 18 Pa.C.S.A. 4904 relating to unsworn falsification to authorities.

_1/12/18_
DATE

_Imelda Xoxe_
Imelda Xoxe

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT D

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL ACTION LAW

| | | |
|---|---|---|
| ERALDO QATO, individually and derivatively on behalf of AMERICA'S HOME CARE, INC. | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | No. 2017-02741 |
| PETRAQ XOXE; | : | |
| IMELDA XOXE; and | : | |
| ALB CARE, INC. | : | |
| Defendants. | : | |
| | : | |

### ORDER

AND NOW, this 1ST day of February, 2018, upon consideration of Defendants' Motion for Stay Pending Appeal and Plaintiff's response thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **DENIED**.

BY THE COURT:

ROBERT J. MELLON, J.

**N.B.** It is your responsibility to notify all interested parties of the above action.

# EXHIBIT E

Benedetto & Associates
By:  Donald Benedetto, Esquire
Atty. I.D. #309199
1500 JFK Blvd., Suite 1203
Philadelphia, PA  19102
(215) 422-3560
(267) 244-9020 (fax)
ATTORNEY FOR APPELLANTS:
Petraq Xoxe, Imelda Xoxe & Alb Care, Inc.

IN THE SUPERIOR COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERALDO QATO, individually & | : | 262 EDA 2018 |
| Derivatively on behalf of | : | |
| AMERICA'S HOME CARE, INC., | : | |
| APPELLANTS | : | |
| | : | |
| v. | : | |
| | : | |
| PETRAQ XOXE, IMELDA XOXE & | : | |
| ALB CARE, INC. | : | |
| APPELLEES. | : | |
| | : | |

**EXPEDITED APPLICATION FOR STAY PENDING APPEAL (EMERGENCY)**

1. The appeal in this matter is permissible as of right under Pa. R.A.P. 311(a)(4) because

   it seeks the review of a Preliminary Injunction entered by a lower court.

2. This Application is sought under Pa. R.A.P. 1732 which allows this Court to stay a

   lower court order pending appeal.

3. This Application is made on an emergency/expedited basis.

4. The Order for which the Stay is sought is attached hereto as Exhibit "A," and was

   entered by the Court of Common Pleas on January 9, 2018.

5. In accordance with Pa. R.A.P. 1732(A), this Application was first made to the Court

   of Common Pleas on January 16, 2018.

1

6. On February 1, 2018, the Court of Common Pleas entered an order denying the Appellant's Motion for a Stay, this Order was docketed on February 6, 2018, and sent on February 13, 2018. A copy of the Order denying Appellant's Motion for a Stay is attached hereto as Exhibit "B."

7. This matter was first commenced by the Plaintiff by way of Complaint filed on April 24, 2017. A copy of the Plaintiff's Complaint is attached hereto and incorporated herein as Exhibit "C".

8. On May 31, 2017, Plaintiff filed a Motion for Preliminary Injunction. A Copy of the Plaintiff's Motion for a Preliminary Injunction is attached hereto and incorporated herein as Exhibit "D."

9. On June 15, 2017, Appellants filed an Answer to Plaintiff's Motion for a Preliminary Injunction. A Copy of Appellants' Answer is attached hereto and incorporated herein as Exhibit "E."

10. On June 19, 2017, the Parties entered into an interim Agreement to maintain the status quo. A copy of the Order effectuating this Agreement is attached hereto as Exhibit "F".

11. On August 9, 2017, the Court ordered a Preliminary Injunction in this matter directing that Fifteen Percent (15%) of the gross revenue of Defendant ALB Care, Inc., be placed in escrow. A copy of this order is attached hereto as Exhibit "G".

12. On October 30, 2017, testimony of witnesses was heard and an order was entered by the Court maintaining in effect the previous Order of the Court dated August 9, 2017, pending the submission of proposed findings of fact and conclusions of law by the parties. A copy of this Order is attached hereto as Exhibit "H."

2

13. On November 9, 2017, Appellants' filed proposed findings of fact and conclusions of law. A Copy of Appellants' proposed findings is attached hereto and incorporated herein as Exhibit "I."

14. On November 10, 2017, Plaintiff filed proposed findings of fact and conclusions of law. A Copy of Plaintiff's proposed findings is attached hereto and incorporated herein as Exhibit "J."

15. On January 9, 2018, the Court entered a final Order granting the Plaintiff's Motion for a Preliminary Injunction. A copy of this Order is attached hereto as Exhibit "A."

16. On January 12, 2018, Defendants filed a Notice of Appeal of the Court's Order of January 9, 2018. A Copy of Defendants' Notice of Appeal is attached hereto as Exhibit "K."

17. Paragraph One (1) of the Court's Order of January 9, 2018, enjoins all Defendants "from taking any further action, directly or indirectly to compete with America's Home Care, Inc., and/or to operate in the home care business in the Philadelphia metropolitan area." Exhibit "A".

18. Paragraph Two (2) of the Court's Order of January 9, 2018, states that a "temporary constructive trust is hereby impressed upon all revenue derived by Defendants in connection with their operation, directly or indirectly, of any home care business in competition with America's Home Care, Inc. Third party payors shall be instructed to pay any revenue from said business into an escrow account and the funds shall be held in escrow until further Order of this Court." Exhibit "A".

19. The grounds for the relief requested are as follows:

3

a. Appellant ALB Care, Inc., has approximately 57 Consumers which it provides services for all of which have been determined by the Commonwealth of Pennsylvania, Department of Public Welfare, to be Nursing Facility Clinically Eligible and thus eligible for Home and Community Based Waiver Services.

b. The Consumers identified in the preceding paragraph are diagnosed by a physician to have an illness, injury, disability or medical condition requiring care and services.

c. The consumers are serviced by W-2 employees of Defendant ALB Care, Inc.

d. Defendant ALB Care, Inc., has approximately Sixty-Two (62) W-2 employees.

e. All employees providing home healthcare services by Defendant ALB Care, Inc., are required to undergo a criminal background check, Tuberculosis testing and State mandated training.

f. Transitioning consumers from one home healthcare provider to another is estimated to take approximately two (2) weeks.

g. There are presently three (3) new Consumers about to commence services through Defendant ALB Care, Inc.

h. Unless a Stay is granted, approximately Fifty-Seven (57) Consumers will immediately cease to be provided home care services until such time as they enroll with a new provider.

i. Unless a Stay is granted, approximately Fifty-Nine (59) employees providing in-home care will experience a disruption in their wages.

4

    j.   Unless a Stay is granted, Three (3) back-office employees of Appellant ALB

        Care, Inc., to include Appellant Imelda Xoxe, will permanently lose their jobs.

    k.   Because the Court's Order of January 9, 2018, creates a constructive trust of

        all revenue, not just profits, and directs all revenue to be placed in escrow,

        Appellant ALB Care, Inc., cannot pay employees, workers compensation and

        other insurance premiums, and other operating expenses without further Order

        of the Court or risk being in contemp.

    l.   Unless a Stay is granted, Appellant ALB Care, Inc., will be forced to cease

        operations because it will be unable to fund its liabilities.

    m.  Unless a Stay is granted, Appellant Imelda Xoxe will be precluded from

        earning a wage in her chosen profession.

    n.   Unless a Stay is granted, Appellant Imelda Xoxe will lose all of her

        investment of paid in capital in ALB Care, Inc.

20. The Stay requested by Appellants ALB Care, Inc., and Imelda Xoxe is proper because

    they are likely to be successful on the merits of their appeal as the Preliminary

    Injunction is not necessary to prevent immediate and irreparable harm as the

    Complaint in this matter was filed over Eight (8) months ago.

21. The Stay requested by Appellants ALB Care, Inc., and Imelda Xoxe is proper because

    they are likely to be successful on the merits of their appeal as the Preliminary

    Injunction issued causes greater harm to the interested parties by effectively

    terminating ALB Care, Inc., as an ongoing business concern.

22. The Stay requested by Appellants ALB Care, Inc., and Imelda Xoxe is proper because

    they are likely to be successful on the merits of their appeal as the Preliminary

Injunction is not reasonably suited as it goes far beyond enjoining Appellant Peter

Xoxe from allegedly breaching a fiduciary duty owed to Plaintiff the essential claim

of Plaintiff's Complaint.

23. The Stay requested for Appellants ALB Care, Inc., and Imelda Xoxe, will not harm

the other interested parties because any alleged damages of the Plaintiffs, if any,

caused by Appellants ALB Care, Inc., and Imelda Xoxe can be adequately

compensated by money damages.

24. If it is proven that Appellants Imelda Xoxe and ALB Care, Inc., did improperly have

clients diverted to it, these clients would have an ascertainable value which could be

compensated by money damages.

25. The parties are already enjoined from soliciting or accepting one another's clients.

The previous injunction is not being appealed at this time.

26. The Stay requested does not adversely affect the public interest because the present

Order, as it pertains to Imelda Xoxe, results in a restraint on trade which is disfavored

by Pennsylvania law as it results in barring her from employment in her profession.

See generally Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 632, 136

A.2d 838, 846 (1957) (regarding restraints on trade in the context of employment

covenants and the historical reluctance on the part of Pennsylvania courts to enforce

any contracts in restraint of free trade, particularly where they restrain an individual

from earning a living at their trade).

27. Expedited relief is requested in this matter based on the following reasons:

   a. The Order appealed results in the immediate destruction of Appellant ALB
Care, Inc., as an ongoing business concern absent a stay being immediately
granted by this Court.

   b. The Order appealed is not reasonably suited as it goes far beyond enjoining
Appellant Peter Xoxe from allegedly breaching a fiduciary duty owed to
Plaintiff, instead it acts as a punishment without trial to Appellants Imelda
Xoxe and ALB Care, Inc.

   c. It is impossible for Appellant ALB Care, Inc., to escrow all revenues as
ordered because this would result in employees, insurance premiums and rents
not being paid.

   d. ALB Care, Inc., overseas the patient care for approximately 57 persons which
the Order appealed does not contemplate in any manner.

   e. Without the emergent relief requested, ALB Care, Inc., would not be able to
pay care givers absent the risk of being in contempt of the Order being
appealed.

   f. Absent the emergent relief requested, several employees would immediately
lose their jobs and income to include Appellant Imedla Xoxe.

28. It must be noted that <u>the parties are already enjoined from soliciting or accepting one
another's clients.</u> The previous order granting this injunction is not being appealed at
this time.

    WHEREFORE, based on the foregoing reasons, attached Memorandum of Law and
Appendix of Exhibits, Appellants Application for a Stay should be GRANTED.

7

Date: 2/14/2018

Respectfully submitted,

Benedetto & Associates

/S/Donald Benedetto

By:  Donald Benedetto, Esquire
Atty. I.D. #309199
1500 JFK Blvd., Suite 1203
Philadelphia, PA  19102
(215) 422-3560
(215) 940-6661 (fax)

EXHIBIT F

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MOTION TO DISMISS

DEBTOR'S CASE, OR IN THE ALTERNATIVE, TO TERMINATE AUTOMATIC STAY

was served by first class mail on March 19, 2018 upon the following:

Kevin P. Callahan
United States Trustee
Department of Justice
833 Chestnut Street
Suite 500
Philadelphia, PA 19107

Douglas R. Lally, Esquire
261 Old York Road, Suite 524
Jenkintown, PA 19046−0703
(Debtor's Counsel)

STANLEY B. CHEIKEN, ESQUIRE

Date: March 19, 2018